## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**RODNEY L. UNDERWOOD,**
**Claimant Below, Petitioner**

**vs.)   No. 21-0033** (BOR Appeal No. 2055570)
                    (Claim No. 2019008195)

**CLARIANT CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rodney L. Underwood, by counsel William C. Gallagher, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Clariant Corporation, by counsel Maureen Kowalski, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on October 23, 2018. On July 24, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated December 17, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Underwood was employed by Clariant Corporation as a fracking technician from October 1, 2016, to March 29, 2018. As a fracking technician, his responsibilities included connecting and disconnecting lines to the blender, which is where the chemicals are treated. He operated a computer which was utilized to pump chemicals into a well during the fracking stage, and he was responsible for cleaning the containers used to store the used fracking water. An Employees' and Physicians' Report of Occupational Injury or Disease was completed on August 10, 2018, alleging that Mr. Underwood's occupational asthma was aggravated by breathing in fumes and chemicals.

Mr. Underwood was first seen for his condition by James Comerci, M.D., in 2016, for breathing issues such as bronchitis and pneumonia. Dr. Comerci referred him to Arrthi Ganesh, M.D., who submitted records from January 24, 2018, through August 6, 2018. Mr. Underwood was treated for asthma, sleep apnea, chemical workers' lung, and reactive lung diagnoses. Pulmonary function testing showed mild obstruction and significant bronchodilator response. Dr. Ganesh noted that the symptoms began following a chemical spill at work. Mr. Underwood was assessed with shortness of breath at rest, asthma, chemical workers' lung, reactive airway disease, obstructive sleep apnea on continuous positive pressure, and occupational lung disease. Dr. Ganesh found that Mr. Underwood had reactive airway disease which was worsened by Biocide exposure and other exposures to gasoline and oil fumes. As a result, she opined that Mr. Underwood was not able to work with chemicals.

The claims administrator issued an Order on October 23, 2018, rejecting the claim for occupational dust/fumes. It was found that Mr. Underwood was not exposed to the hazards of occupational dust/fumes disease in the course and scope of employment with Clariant Corporation. Specifically, the claims administrator reasoned that he had not been exposed to the hazards of abnormal quantities of dust for a sufficient period under West Virginia Code § 23-4-15(b). Mr. Underwood protested the claims administrator's rejection of his claim.

On December 11, 2018, Mr. Underwood testified at deposition about his exposure to chemicals while working with Clariant Corporation. He alleged that on March 28, 2018, he was

2

working at the Horse Mill pad in Ohio and was disconnecting a tanker when a spill occurred. At the time of the spill, he was working with James Simmons. Although Mr. Underwood was wearing the proper protective equipment, he could still smell the Biocide, which is a chemical used to kill bacteria in the fracking water. He testified that Biocide has a stronger magnification than chlorine and is present at each job site. As a fracking technician, Mr. Underwood connected and disconnected lines to the blender, which was where chemicals were treated at the fracking pad for each stage or to the tanks that was being treated. He testified that if the chemical got on your skin, it could kill you. Besides Biocide, he was handling and monitoring scale, which is an inhibiter. Mr. Underwood testified that he was exposed to the same or similar chemicals throughout his employment.

In a deposition taken on October 8, 2019, James Simmons testified that he is a completion manager with Clariant Corporation. In 2018, he worked with Mr. Underwood as his supervisor. He testified that he had no records that Mr. Underwood reported any leak or any problem on March 28, 2018, while working in Ohio. Mr. Simmons said that if there was a leak, he would have had to call for assistance and submit a report to the safety director. There were no reports of an event occurring on that date. He testified that Mr. Underwood worked in a curtain-side trailer, along with proper protective equipment to work around chemicals. Their job was to hook up fracking lines, and they would usually perform one to four stages a day. Once a tote of chemicals ran out, their job was to disconnect the line and shut off the valves in order to be able to conduct the same operation again until the tote was empty.

On October 21, 2019, Christopher Martin, M.D., reviewed medical records and examined Mr. Underwood for an Independent Medical Evaluation. Dr. Martin stated that this is a complex claim with a large number of respiratory diagnoses. It was Dr. Martin's opinion that there is no support in the record for pulmonary diagnoses such as pulmonary fibrosis, interstitial lung disease, pneumoconiosis, or pneumitis. While Mr. Underwood's lung function showed obstruction, Dr. Martin noted that the obstruction shown is reversible, rather than the fixed pattern seen with chronic obstructive pulmonary disability. Dr. Martin noted Mr. Underwood's significant coronary artery disease and stated that it would account for some element of his shortness of breath on exertion, chest pain, and fatigue. He opined that Mr. Underwood had allergic rhinitis that predated his employment as a fracking technician and stated that medical records supported that he had asthma prior to November 2014. It was Dr. Martin's opinion that Mr. Underwood's asthma was not aggravated by his employment. Instead, his known sleep apnea and coronary artery disease accounted for his impairment.

In a Final Decision dated July 24, 2020, the Office of Judges concluded that Mr. Underwood failed to establish by a preponderance of the evidence that he suffered an occupational disease in the course of and as a result of his employment. The Office of Judges determined that it is more likely than not that his numerous medical conditions are the cause of his current complaints. The most persuasive evidence of record was found to be the October 21, 2019, report of Dr. Martin, who opined that Mr. Underwood's asthma was not aggravated by his employment. The Office of Judges affirmed the claims administrator's rejection of the claim on October 23, 2018. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 17, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The Office of Judges determined that the most credible evidence of record states that Mr. Underwood's asthma was not aggravated by his employment. As such, he has failed to establish by a preponderance of the medical evidence that he suffered an occupational disease in the course of and as a result of his employment.

Affirmed.

**ISSUED: April 20, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment

4